Markman, J.
I concur in the result reached by the majority, as well as its analysis, because I agree that (1) cross-plaintiff’s, Millen Roofing Company’s, construction lien was invalid under MCL 570.1114 because Millen was unlicensed, (2) Millen cannot seek compensation from the cross-defendant homeowners, Robert and Patricia Stokes, under his contract with them for the installation of a slate roof because MCL 339.2412 prevents an unlicensed contractor from seeking such compensation, and (3) Millen is not entitled to equitable relief because allowing such relief would essentially enable Millen to circumvent a statute that expressly prohibits an unlicensed contractor from seeking compensation for the performance of an act or contract for which a license is required. Accordingly, I would reverse the trial court and remand this case to that court.
I write separately simply to point out the unfairness of the result reached here today—a result nonetheless mandated by the residential builders act. The Stokes have obtained a roof from Millen at substantially below the contract price on the basis that Millen lacked a residential builder’s license; Millen is simply out of luck for the time, the materials, and the money *676 he has put into this roofs construction because he lacked this license. What renders this particularly unfair in this case is that the Stokes knew that Millen was unlicensed, knew that this meant that Millen would be unable to bring suit against them for their failure to pay and be unable to obtain a hen against their property, and had expressly indicated to Millen that there was no need for him to be or become licensed.[1] In addition, the Stokes repeatedly assured Millen that he would be paid for his work.[2]
The Stokes here avoid payment for work they requested from Millen with Ml knowledge that Millen was required to be licensed and that he was not. They also had Ml knowledge that, as a result of Millen’s status, they would be able to avoid paying him for his work, as evidenced by the fact that the Stokes had recently prevailed in another lawsuit against an unlicensed contractor they had hired to do home improvement work. Under these facts, it appears that the Stokes were seeking to take financial advantage of Millen’s unlicensed status.[3]
*677 In fashioning equitable relief, the trial court sought to maintain the parties in the status quo ante. That is, the court awarded Millen the amount of money that the Stokes had agreed to pay Millen for the roof minus the amount that the Stokes had already paid Millen.[4] To the extent that equity was appropriately applied in this case, I believe that the trial court acted altogether fairly and reasonably, indeed correctly.
However, despite this personal view that allowing the Stokes here to have their roof without paying Millen the contract price is a highly inequitable result, I nonetheless agree with the majority that we cannot allow equity to contravene the clear statutory intent of the Legislature. Such an intent is established in the residential builders act, which prohibits unlicensed residential builders from recovering compensation from homeowners for their work. The Legislature has determined that one, very considerable, penalty for performing work without the required license is that the unlicensed builder will be denied the ability to sue for payment for the work performed. The trial court here, despite the best of intentions, circumvented this legislative intent by ordering the Stokes to pay Millen for the work performed, even though *678 Millen performed the work without the required license. This is impermissible under the language of MCL 339.2412. Accordingly, if such inequitable results are to be avoided, it is the Legislature that must take action.
At the time Republic Bank v Modular One LLC, 232 Mich App 444; 591 NW2d 335 (1998), was decided, a case that I authored, I believed that Kirkendall v Heckinger, 403 Mich 371; 269 NW2d 184 (1978), mandated the result reached in Republic Bank. At the time, I understood Kirkendall to stand for the proposition that equity may be invoked on behalf of an unlicensed builder to require a homeowner to pay for work done when such homeowner seeks to clear title. However, upon further reflection, and after considering the analysis of the majority opinion, I now agree with the majority that Republic Bank erred and that Kirkendall was reasonably distinguishable.
In Kirkendall, the unlicensed builder had an equitable mortgage on the subject property. When the homeowner filed suit to clear his title, the Court concluded that before title could be cleared, the homeowner would first have to pay the unlicensed builder for the improvements that he made on the property with his consent. Kirkendall, supra at 374. In Republic Bank, as well as in this case, the unlicensed builders did not have equitable mortgages on the properties; instead they simply had invalid liens. Therefore, when the homeowners brought suit to clear their titles, there was no need for the homeowners to first pay the unlicensed builders because the hens were simply unenforceable. That is, while in Kirkendall, there was a valid encumbrance on the land requiring the homeowner to do equity before the cloud on his *679 title could be removed, in Republic Bank and this case, there simply were no valid encumbrances on the lands, and thus the homeowners should not have been required to do equity in order to get the clouds on their titles removed. Accordingly, I now agree with the majority that Republic Bank erred, and that it should be overruled. The homeowners here should not have been required to pay the unlicensed builder for the roof because MCL 339.2412 expressly prohibits an unlicensed contractor from seeking compensation for the performance of an act or contract for which a license is required.

 Matt Millen testified that Mrs. Stokes had told him that the “licenses would be her responsibilities,” that the license “wasn’t a problem,” and that the license “was taken care of.” The Stokes further communicated to Millen that they would be willing to waive the assertion of Millen’s unlicensed status in exchange for Millen’s waiver of his right to file a construction lien. While such a communication is in accord with Millen’s assertion that he was unaware that such a lien was unlawful, and that he was acting in good faith when he subsequently filed the lien, it is’ also consistent with the Stokes’ interest in avoiding the need to bring a suit to quiet title.

 There is no indication from either party that the work eventually performed by Millen was below par or substandard in any respect. Thus, the Stokes had no apparent reason not to pay Millen for his work, as agreed.

 I do not believe, as the majority apparently does, that the fact that the Stokes had, at one juncture, offered to pay the balance of the contract price in exchange for an unconditional waiver of lien necessarily means that the Stokes were acting in good faith during the entirety of this pro *677 cess. The fact that the Stokes now are unwilling to pay the contract price, and now are strenuously opposed to the trial court’s decision, which essentially ordered them to do nothing more than pay the contract price, causes me to disagree with the majority in its assessment of the Stokes’ conduct. The majority states that it makes “no assessment” of the Stokes’ motives, ante at 672, n 7, but this statement is difficult to reconcile with its immediately preceding statement in the same footnote.

 The trial court did not award Millen any portion of the $52,824 in “extras” that Millen claimed the Stokes owed him. Rather, the trial court merely ordered the Stokes to pay Millen the balance of the agreed upon contract price, which was $113,269, as the Stokes had agreed to pay Millen $165,203 for the roof and had only paid Millen $51,934 for the roof.